HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT MEEKER and AMY
MEEKER, individually, the marital
community comprised thereof, and on
behalf of C.M., a minor,

        Plaintiffs,

        v.

STARFISH CHILDREN'S
SERVICES, PATRICK
McLAUGHLIN and CYNTHIA
McLAUGHLIN and the marital
community comprised thereof,
MICHAEL BOSMANN and LISA
ANN BOSMANN and the marital
community comprised thereof, and
JANE DOES 1-2,

        Defendants.

CASE NO. C17-376 RAJ

ORDER

This matter comes before the Court on Defendants Michael and Lisa Ann Bosmann's motion to dismiss. Dkt. # 20. Plaintiffs do not oppose the motion as to Ms.

ORDER - 1

Bosmann but do so as to Mr. Bosmann. Dkt. # 25[1]. Therefore, the Court **GRANTS** the motion as to Ms. Bosmann and **GRANTS in part and DENIES in part** the motion as to Mr. Bosmann.

I.  BACKGROUND

The following is taken from Plaintiffs' Complaint, which is assumed to be true for the purposes of this motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiffs adopted C.M. from a foster home in China run by Starfish Children's Services ("Starfish"). *See generally* Dkt. # 1 (Complaint). Plaintiffs learned that C.M. suffered from spina bifida, which "limited her physical, cognitive, behavioral, and social abilities." *Id.* at ¶ 3.03. Plaintiffs were familiar with adopting children with special needs, and therefore were not dissuaded from adopting C.M. with knowledge of her spina bifida. *Id.* However, upon arriving in China to pick up C.M. and bring her home to the U.S., Plaintiffs realized that C.M. might have medical issues beyond the spina bifida. *Id.* at ¶ 3.04.

Plaintiffs sought information from Starfish to learn the extent of C.M.'s health issues but received few answers. *Id.* at ¶ 3.07. After engaging several health practitioners, Plaintiffs were informed that C.M. suffered from epilepsy, severely rotten teeth, hydrocephalus, cerebral palsy, scoliosis, brain cerebella dysplasia, self-harm, blindness, deafness, sleep troubles, and hepatitis C. *Id.* Plaintiffs soon learned that C.M. would have a much shorter lifespan than they were prepared to accept. *Id.*

---

[1] The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994). **The Court may consider striking any future brief that contains excessive footnotes.**

1    Plaintiffs allege that Starfish was aware of C.M.'s health issues beyond the spina
bifida but chose not to disclose the information to Plaintiffs for fear that Plaintiffs would
decide against adopting C.M. *Id.* at ¶¶ 3.08, 3.17-3.19. Plaintiffs have already incurred
more than $500,000 in medical bills to treat C.M. and expect more bills in the future. *Id.*
at ¶ 3.24.

In March 2017, Plaintiffs sued Starfish and its Board of Directors for various
claims arising out of fraud and misrepresentations. *See id.* The Bosmanns—Mr.
Bosmann was a member of Starfish's Board—are now before the Court seeking dismissal
of the claims asserted against them.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders*, 504 F.3d at 910. A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III. DISCUSSION

Plaintiffs plead seven causes of action in their Complaint. Dkt. # 1 (Complaint) at ¶¶ 4.01-4.35. The Court will analyze the claims in turn below.

A. <u>Wrongful Adoption</u>

*1. Choice of Law*

Plaintiffs bring a wrongful adoption claim, arguing that Defendants induced them into adopting C.M., causing them to incur significant monetary losses. Dkt. # 1 (Complaint) at ¶¶ 4.01-4.06. Mr. Bosmann first argues that Texas law governs this claim, and because Texas does not recognize a wrongful adoption cause of action, this claim fails. Dkt. # 20 at 6. Alternatively, Mr. Bosmann argues that the claim fails under Washington law due to insufficient pleading. *Id.* at 9.

A federal court sitting in diversity applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because substantive law is at issue, the Court looks to state law. "In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits." *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 833 (9th Cir. 2006). In Washington, courts "first determine whether an actual conflict between Washington and other applicable state laws exists." *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008). "If an actual conflict exists, the Court must determine the forum or fora that have the 'most significant relationship' to the action to determine the applicable law." *Id.* (citations omitted).

Mr. Bosmann does not cite an actual conflict between Washington and Texas law regarding wrongful adoption claims. Instead, Mr. Bosmann leaps to the second step in the analysis as if the Court could assume that an actual conflict exists. *See* Dkt. # 20 at 7-8. But, based on Mr. Bosmann's representations, it is unclear whether an actual conflict exists. *See* Dkt. # 20 at 8 (stating that Mr. Bosmann is "unaware of any authority supporting a claim for wrongful adoption under Texas law" because "[c]ases that have

surveyed jurisdictions do not identify Texas as a state that recognizes wrongful adoption claims."). Moreover, in his reply brief, Mr. Bosmann does not contest Plaintiffs' contention that Texas would likely recognize a wrongful adoption claim similar to Washington, thereby eliminating any potential conflict between the states' laws. *See generally* Dkt. # 27.[2] The Court will not do Mr. Bosmann's work for him, and if he chooses not to contest this point, then the Court is inclined to find that, on the record before it, no actual conflict exists between Washington and Texas law such that the Court must engage in a choice of law analysis. Therefore, the Court will apply Washington law to Plaintiffs' wrongful adoption claim. *Kelley*, 251 F.R.D. at 550 ("In the absence of a conflict, Washington law applies.").

2. *Washington's Statute Creating a Duty to Disclose Information in the Adoption Context*

In Washington, wrongful adoption claims arise from the failure to disclose certain medical or social history. *See* RCW 26.33.350 (creating a statutory duty to disclose adoptee's medical/psychological history); RCW 26.33.380 (creating a statutory duty to disclose adoptee's social history). Mr. Bosmann argues that only adoption placement agencies are liable under Washington's adoption disclosure statutes. Dkt. # 20 at 9. Mr. Bosmann's argument is based on *McKinney v. Washington*, in which the Washington Supreme Court granted adoptive parents a cause of action for negligent failure to meet the disclosure requirements under RCW 26.33.350.[3] *See McKinney v. Washington*, 134

---

[2] The Court notes that Mr. Bosmann conspicuously failed to mention Tex. Fam. Code Ann. § 162.005, which appears to be similar to RCW 26.33.350. Section 162.005(d) states, in part, that "[i]f the child has been placed for adoption by a person or entity other than the department, a licensed child-placing agency, or the child's parent or guardian, it is the duty of the person or entity who places the child for adoption to prepare the [report on the available health, social, educational, and genetic history of the child to be adopted]." Mr. Bosmann does not discuss how this statute may or may not compare to the Washington statute at issue, and the Court declines to do this work on his behalf.

[3] Prior to *McKinney*, Washington recognized "causes of action for fraud and intentional misrepresentation in failing to disclose pertinent information about an adoptive child[.]"

Wash. 2d 388, 389–90, 950 P.2d 461, 462 (1998). RCW 26.33.350 states, in relevant part,

> Every person, firm, society, association, corporation, or state agency receiving, securing a home for, or otherwise caring for a minor child shall transmit to the prospective adopting parent prior to placement and shall make available to all persons with whom a child has been placed by adoption a complete medical report containing all known and available information concerning the mental, physical, and sensory handicaps of the child.

RCW 26.33.350(1).

The court in *McKinney* found that "the Legislature has established the duty owed by adoption placement agencies in RCW 26.33.350[.]" *McKinney*, 134 Wash. 2d at 396. That the court directed its order to the Department of Social and Health Services (DSHS) specifically, or to "adoption placement agencies" generally, is not reflective of the true reach of RCW 26.33.350. Rather, it reflects the fact that the plaintiffs brought suit against DSHS rather than another entity recognized by RCW 26.33.350.

If the Court were to adopt Mr. Bosmann's restrictive reading of *McKinney*, then it would be effectively rewriting RCW 26.33.350. For if the Court only allowed suit against agencies, as defined by RCW 26.33.020, then it would be denying the Legislature's clear wish for "every person, firm, society, association, [or] corporation" to assume the duty to disclose medical information to prospective adopting parents. Moreover, Mr. Bosmann notes that "Agency" is defined in RCW 26.33.020(7) as "any public or private association, corporation, or individual licensed or certified by the department as a child-placing agency . . . ." *See* Dkt. # 20 at 9. He appears to argue that, because *McKinney* and other cases discuss agencies as defined in this way, then the duty to disclose in RCW 26.33.350 must only apply to these agencies. That the remaining

---

*McKinney*, 134 Wash. 2d at 394. *McKinney* expanded adoptive parents' rights of action to include claims for the negligent failure to meet these disclosure requirements. *Id.* at 389-90.

terms in RCW 26.33.350(1)—"person, firm, society, association, corporation"—are not defined in RCW 26.33.020 does not negate their existence or render them meaningless. Importantly, when federal courts construe statutes, they do "so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *United States v. Menasche*, 348 U.S. 528, 538–539 (1955). As such, the Court declines to adopt Mr. Bosmann's narrow reading of *McKinney* and RCW 26.33.350(1).[4]

The statutory duty to disclose in RCW 26.33.350 extends to Starfish and its board members. Therefore, Plaintiffs may assert their wrongful adoption claims against Starfish and its board members.

To bring claims against Defendants for failing to disclose C.M.'s medical information, Plaintiffs must establish that Starfish "breached its statutory duty of disclosure and that such failure to disclose proximately caused plaintiff's damages." *Price v. State*, 96 Wash. App. 604, 614–15, 980 P.2d 302, 308–09 (1999). Plaintiffs have met their burden. In their Complaint, Plaintiffs state that they knew about C.M.'s spina bifida but were left recklessly in the dark about a litany of other health issues from which she suffered. Dkt. # 1 (Complaint) at ¶¶ 3.03, 3.07, 4.12. Plaintiffs further state that Starfish and its Board were in possession of C.M.'s pertinent health information, *id.* at ¶¶ 3.08-3.16, and failed to disclose it, *id.* at ¶ 3.17. Plaintiffs also state that Starfish and its Board were grossly negligent in withholding the information in order to induce Plaintiffs to adopt C.M. because Defendants knew that this information was material to prospective parents. *Id.* at ¶¶ 3.19-3.21, 4.04. Had Plaintiffs known the extent of C.M.'s medical

---

[4] Mr. Bosmann claims that such an interpretation "would radically expand the holding of *McKinney* far beyond what the Washington Supreme Court or the Washington Legislature intended." Dkt. # 27 at 5. The Court disagrees. Any other interpretation would undermine the Legislature's careful drafting and assail the "strong public policy" grounds asserted by *McKinney* and *Gibbs v. Ernst*, 538 Pa. 193, 216, 647 A. 2d 882 (1994).

issues, they would not have adopted her. *Id.* at ¶ 3.24. As a result of their reliance on Defendants' representations of C.M.'s medical information and subsequent adoption, Plaintiffs have suffered damages. *Id.* at ¶ 3.24. Therefore, based on the allegations set forth in the Complaint, Plaintiffs have stated a cause of action for wrongful adoption—under a gross negligence standard—against Starfish and its Board, including Mr. Bosmann.

Mr. Bosmann argues that Starfish is not liable under RCW 26.33.350 given its contractual releases. Dkt. # 20 at 11. He cites no authority suggesting that Starfish was capable of contracting out of a statutory duty to provide certain medical information, and the case he cites in the footnote of his reply brief focuses on "extra-contractual representations" and not statutory duties. *See* Dkt. # 27 at 5-5; *see also Petrobras Am. Inc. v. Union Oil Co. of Cal.*, 177 F. App'x 460, 462 (5th Cir. 2006). Though the agreement between Starfish and Plaintiffs states that it does not create a disclosure obligation, it is silent on whether it exculpates any party from a statutory duty to disclose information. *See* Dkt. # 21-1 at Exs. B, C, D. Based on the record before it and taking Plaintiffs' allegations as true, the Court cannot find at this stage in the litigation that Starfish contracted out of its statutory duty—indeed, it does not appear that an exculpatory clause was included in any agreement between the parties—to disclose C.M.'s medical information to Plaintiffs.

Mr. Bosmann also argues that Plaintiffs did not adequately plead their causes of action against the individual defendants. Dkt. # 20 at 10-11. The Court disagrees. Plaintiffs clearly stated that they would refer to all defendants as "Starfish", *see* Dkt. # 1 (Complaint) at ¶ 3.01, and alleged all their claims against "Defendants", *see id.* at ¶¶ 4.01-4.35. As a member of Starfish's Board of Directors, the Court finds that Mr. Bosmann had notice through Plaintiffs' Complaint about what he would be called upon to defend. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007) (finding that the defendant's "argument ignores the purpose of a complaint under

issues, they would not have adopted her. *Id.* at ¶ 3.24. As a result of their reliance on Defendants' representations of C.M.'s medical information and subsequent adoption, Plaintiffs have suffered damages. *Id.* at ¶ 3.24. Therefore, based on the allegations set forth in the Complaint, Plaintiffs have stated a cause of action for wrongful adoption—under a gross negligence standard—against Starfish and its Board, including Mr. Bosmann.

Mr. Bosmann argues that Starfish is not liable under RCW 26.33.350 given its contractual releases. Dkt. # 20 at 11. He cites no authority suggesting that Starfish was capable of contracting out of a statutory duty to provide certain medical information, and the case he cites in the footnote of his reply brief focuses on "extra-contractual representations" and not statutory duties. *See* Dkt. # 27 at 5-5; *see also Petrobras Am. Inc. v. Union Oil Co. of Cal.*, 177 F. App'x 460, 462 (5th Cir. 2006). Though the agreement between Starfish and Plaintiffs states that it does not create a disclosure obligation, it is silent on whether it exculpates any party from a statutory duty to disclose information. *See* Dkt. # 21-1 at Exs. B, C, D. Based on the record before it and taking Plaintiffs' allegations as true, the Court cannot find at this stage in the litigation that Starfish contracted out of its statutory duty—indeed, it does not appear that an exculpatory clause was included in any agreement between the parties—to disclose C.M.'s medical information to Plaintiffs.

Mr. Bosmann also argues that Plaintiffs did not adequately plead their causes of action against the individual defendants. Dkt. # 20 at 10-11. The Court disagrees. Plaintiffs clearly stated that they would refer to all defendants as "Starfish", *see* Dkt. # 1 (Complaint) at ¶ 3.01, and alleged all their claims against "Defendants", *see id.* at ¶¶ 4.01-4.35. As a member of Starfish's Board of Directors, the Court finds that Mr. Bosmann had notice through Plaintiffs' Complaint about what he would be called upon to defend. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007) (finding that the defendant's "argument ignores the purpose of a complaint under

Rule 8—to give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction. 'Specific facts are not necessary . . . .' [The defendant] would essentially impose a heightened pleading . . . even though the Supreme Court has repeatedly instructed us not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule.") (citations omitted). Therefore, the Court finds that Plaintiffs sufficiently pled their claims.

Along with their claim for gross negligence, Plaintiffs also assert claims for ordinary negligence. These claims fail as to Mr. Bosmann.

B. <u>Negligence</u>

Mr. Bosmann cannot be liable for ordinary negligence per RCW 4.24.264. Dkt. # 20 at 12-13. RCW 4.24.64 states:

> (1) Except as provided in subsection (2) of this section, a member of the board of directors or an officer of any nonprofit corporation is not individually liable for any discretionary decision or failure to make a discretionary decision within his or her official capacity as director or officer unless the decision or failure to decide constitutes gross negligence.
>
> (2) Nothing in this section shall limit or modify in any manner the duties or liabilities of a director or officer of a corporation to the corporation or the corporation's members.

RCW 4.24.264. Plaintiffs counter without citing any authority that RCW 4.24.264 does not apply because Mr. Bosmann was not exercising discretionary authority. Dkt. # 29 at 2-3.

"RCW 4.24.264(1) sets a gross negligence standard for liability of directors in the course of their official actions, while subsection (2) preserves any different statutory standard that might apply between directors and the corporation or its members." *Waltz v. Tanager Estates Homeowner's Ass'n*, 183 Wash. App. 85, 91, 332 P.3d 1133, 1135 (2014). Plaintiffs do not allege that Mr. Bosmann was acting outside his official duties in allegedly failing to disclose C.M.'s medical information. As such, the Court dismisses

any claims against Mr. Bosmann that arise from ordinary negligence, including claims related to Mr. Bosmann's alleged negligence in failing to disclose medical information and negligent misrepresentation.

C. Fraud and Intentional Misrepresentation

Plaintiffs bring a claim for fraud and intentional misrepresentation regarding representations that Starfish allegedly made through its website and by intentionally withholding C.M.'s medical information. Dkt. # 1 (Complaint) at ¶¶ 4.05, 4.23. These claims are grounded in fraud and therefore must be pleaded with particularity. Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. '[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'") (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443(1st Cir. 1985)). To satisfy Rule 9(b)'s heightened pleading requirement, plaintiffs must assert allegations that are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations and citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

The elements of a fraud claim in Washington are:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King Cty.*, 164 Wash. 2d 640, 662, 192 P.3d 891, 902 (2008).

Plaintiffs have pled their fraud claims with particularity. Specifically, Plaintiffs claim that Starfish and its Board of Directors represented that C.M. suffered from spina bifida but withheld information about her other medical conditions. Dkt. # 1 (Complaint) at ¶¶ 3.07, 3.14. Plaintiffs claim that Defendants knew that C.M. had other health conditions, such as epilepsy. *Id.* at ¶¶ 3.08-3.12. Plaintiffs further allege that Defendants knew that this health information was material to prospective adopting parents like Plaintiffs. *Id.* at ¶¶ 3.20, 3.21. Plaintiffs aver that Defendants withheld the information from Plaintiffs, knowing that Plaintiffs would rightfully rely on the abridged medical record, so that Plaintiffs would adopt C.M. with limited knowledge. *Id.* at ¶¶ 3.17[5], 3.19. As a result, Plaintiffs claim that they have already incurred more than $500,000 in medical bills, and they estimate that this amount will continue to grow. *Id.* at ¶ 3.24.

Plaintiffs also allege a claim grounded in fraud and intentional misrepresentation with regard to Defendants' representations on its website that Starfish "create[s] a medical history file for each child that details their history from the day they arrived to the day they were adopted." *Id.* at ¶ 4.23. For the same reasons detailed above, Plaintiffs sufficiently describe a fraudulent scheme in which Defendants withheld information and therefore knowingly failed to create an adequate medical file for Plaintiffs to review in order to deceive prospective parents into an unviable adoption.

D. Intentional Infliction of Emotional Distress

Plaintiffs allege a claim for intentional infliction of emotional distress (IIED), stating that "Defendants engaged in extreme and outrageous behavior[.]" Dkt. # 1 (Complaint) at ¶ 4.30. To survive a motion to dismiss, Plaintiffs' Complaint must show that Defendants engaged in extreme and outrageous conduct that intentionally or

---

[5] Plaintiffs' evidence includes emails from members of the Board who are speaking on behalf of the Board. *See, e.g.*, Dkt. # 1 (Complaint) at ¶ 3.17 (stating that "[t]he board gives you a receipt that we all 'get it' . . . ."). Therefore, the Court finds that Plaintiffs specifically tied the alleged fraudulent behavior to the board of directors, including Mr. Bosmann.

recklessly inflicted emotions distress, and Plaintiffs actually suffered severe emotional distress as a result. *Kloepfel v. Bokor*, 149 Wash. 2d 192, 195, 66 P.3d 630, 632 (2003). Plaintiffs' burden on this claim is high, requiring a showing of behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 196 (internal quotations and citations omitted). Though the alleged circumstances of this case are unfortunate and upsetting, they are similar to many wrongful adoption claims brought by adoptive parents. Were the Court to find that a claim for IIED exists based on the pleadings in this Complaint, it would effectively be authorizing a claim for IIED for any wrongful adoption lawsuit. Plaintiffs have not shown that Mr. Bosmann acted atrociously or in a way that is utterly intolerable. *See, e.g.*, *id.* at 194 (defendant called the plaintiff's "home 640 times, her work 100 times, and the homes of the men she knew numerous times as well."). The Court does not find that Plaintiffs satisfied this burden and therefore grants the motion as to the IIED claim with leave to amend.

E. Respondeat Superior and Board of Director Liability

Plaintiffs' final claims are titled "Respondeat Superior" and "Board of Director Liability." Dkt. # 1 (Complaint) at ¶¶ 4.32, 4.33-4.35. However, as Mr. Bosmann alludes, these claims appear to be theories of liability that are encompassed by Plaintiffs' other claims. Therefore, the Court dismisses these causes of action to the extent that they have already been pled.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion. Dkt. # 20. The Court **GRANTS** the motion as to Ms. Bosmann. The Court further **GRANTS** the motion with prejudice as to the claims for negligence, negligent misrepresentation, respondeat superior, and board of director liability alleged against Mr. Bosmann. The Court **GRANTS** the motion without prejudice as to Plaintiffs' IIED claim against Mr. Bosmann. The Court **DENIES** the motion with regard

to the remaining claims.  If Plaintiffs choose to do so, they may amend their Complaint within twenty-one (21) days from the date of this Order.

Dated this 8th day of February, 2018.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge