THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT MEEKER, *et al.*,

        Plaintiffs,

    v.

STARFISH CHILDREN'S SERVICES, *et al.*,

        Defendants.

CASE NO. C17-0376-JCC

ORDER

This matter comes before the Court on the parties' joint Local Civil Rule 37 submissions (Dkt. Nos. 54, 65). The Court has thoroughly considered the parties' briefing and the relevant record, and hereby ORDERS that:

## I. BACKGROUND

The Court has previously set forth the facts of this case, and will not repeat them here. (*See* Dkt. Nos. 32, 76.) Since beginning discovery, a series of discovery disputes have arisen. (*See* Dkt. Nos. 54, 65.) On March 25, 2019, in accordance with Local Civil Rule 37, the parties filed their first joint motion for discovery ("LCR 37 Submission No. 1"), which included two discovery disputes. (Dkt. No. 54.) Justifying the Court's faith in the parties' ability to resolve discovery disputes without judicial intervention, the parties have since resolved one of these two disputes. (Dkt. No. 75.) The remaining issue in LCR 37 Submission No. 1 is whether Plaintiffs' adopted children's medical records (besides C.M.'s, the adopted child at issue in this litigation)

are discoverable. (*See* Dkt. No. 54.)

On April 18, 2019, the parties filed their second joint motion for discovery ("LCR 37 Submission No. 2"). (Dkt. No. 65.) LCR Submission No. 2 asks the Court to determine whether 28 different privilege log entries asserted by Defendant Michael Bosmann are indeed subject to either the attorney-client privilege or the work product doctrine. (*See id.*) Plaintiffs assert that the privilege log entries are ripe for *in camera* review. (*See id.*)

## II. DISCUSSION

### A. Motions to Compel Discovery

Discovery motions are strongly disfavored. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In addressing the proportionality of discovery, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The Court has broad discretion to decide whether to compel discovery. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

### B. LCR 37 Submission No. 1

In the parties' first joint submission, Defendant Bosmann seeks the medical records of Plaintiffs' adopted children other than C.M. (Dkt. No. 54 at 13–15.) Defendant Bosmann asserts that these records are relevant for two reasons: (1) the records may refute Plaintiffs' assertion that they are unable to provide adequate care for C.M. because they may show that Plaintiffs' other children suffer from equally or more severe medical conditions; and (2) the records may shed light on the amount of damages actually suffered by Plaintiffs (for example, if Plaintiffs' other adopted children's conditions have contributed to Plaintiffs' claimed damages). (*Id.*) Plaintiffs oppose the production of the medical records because: (1) the request invades the

ORDER
C17-0376-JCC
PAGE - 2

privacy of them and their other adopted children; and (2) Defendant Bosmann may obtain the information he seeks through less intrusive means. (*Id.* at 15–18.)

The Court is mindful of the extremely sensitive nature of the medical records of Plaintiffs' other adopted children. However, some of their medical history is relevant to whether Plaintiffs have the ability to properly care for C.M. This is because if Plaintiffs are able to care for equally or more severe medical conditions of their other children, they may be more capable of caring for C.M. than they indicate.

Keeping in mind the sensitive nature of the children's full medical files, the Court ORDERS Plaintiffs to produce, whether in the form of deposition testimony or a response to an interrogatory, the following information about each of Plaintiffs' other adopted children: (1) medical diagnoses (except mental health diagnoses); (2) treatments related to the aforementioned diagnoses; (3) prognoses; (4) a typical week of care for each child (including schedule and cost); and (5) any special care each child needs over the course of a longer period of time (including schedule and cost). In order to protect the confidential nature of this information, the parties are ORDERED to submit a revised stipulated protective order that covers the medical history and information for each of Plaintiffs' adopted children other than C.M., no later than 14 days from the entry of this order. Plaintiffs shall comply with this order no later than 14 days after the Court enters the stipulated protective order.

**C.     LCR 37 Submission No. 2**

In the parties' second joint submission, Plaintiffs seek *in camera* review of numerous documents in Defendant Bosmann's privilege log that he argues are either subject to the attorney-client privilege or the work product doctrine. (Dkt. No. 65.)

1. <u>Attorney-Client Privilege</u>

Defendant Bosmann's privilege log indicates that Privilege Log Entries 6, 21, 30, 31, and 33–42 are protected by the attorney-client privilege. (*See* Dkt. No. 65-1 at 6, 12, 16–18.) "A party claiming that otherwise discoverable information is exempt from discovery on grounds of

the attorney-client privilege carries the burden of establishing entitlement to the privilege." *Newman v. Highland Sch. Dist. No. 203*, 381 P.3d 1188, 1191 (Wash. 2016). "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." Wash. Rev. Code § 5.60.060(2)(a). "The attorney-client privilege applies to communications and advice between an attorney and client and extends to documents which contain a privileged communication." *Pappas v. Holloway*, 787 P.2d 30, 34 (Wash. 1990).

The privilege extends to corporate clients. *Newman*, 381 P.3d at 1191 (citing *Upjohn v. United States*, 449 U.S. 338, 396 (1981)). In the corporate context, the privilege applies to communications between counsel and corporate employees regarding matters within the scope of their corporate duties, supplied for the purpose of obtaining legal advice for the corporation, and treated in a confidential matter. *Upjohn*, 449 U.S. at 394–95. Confidential conversations between counsel and members of the top management of a corporation are covered by the attorney-client privilege, as top management is empowered to act on behalf of the corporation. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Additionally, confidential conversations with mid-level or lower-level employees may be covered by the attorney-client privilege if those employees possess information needed by counsel in order to give well-informed legal advice, or if those employees are the people acting on counsel's legal advice. *See Upjohn*, 449 U.S. at 390–91. "[W]aiver may occur when the communication is made in the presence of third persons" that do not include those listed above. *See Dietz v. Doe*, 935 P.2d 611, 619 (Wash. 1997).

                        *i. Privilege Log Entries 6 and 21*

Plaintiffs assert that the attorney-client privilege is inapplicable to Privilege Log Entries 6 and 21 because the confidential communications were discussed with third parties, thus waiving the privilege. (Dkt. No. 65 at 13–14.) Although it is not completely clear who these third parties are, they include at least some Starfish board members and some employees of Starfish. (Dkt.

Nos. 65-1 at 6–12, 65-2 at 3.) Discussion with fellow Starfish board members does not waive the privilege because such discussion is only fully informing the client, Starfish, about counsel's advice. (*Id.*) However, discussion with mid-level and lower-level employees may waive the privilege, depending on whether those employees possess information needed by counsel or are acting on counsel's legal advice. *See Upjohn*, 449 U.S. at 390–91.[1] Because Defendant Bosmann has not met his burden in establishing that Jet Tjarks and Scarlett Huang were necessary to the email exchange in Privilege Log Entry 6, Defendant Bosmann is ORDERED to produce Privilege Log Entry 6 for *in camera* review. To the extent any mid-level or lower-level employees were included on the email in Privilege Log Entry 21, Defendant Bosmann is ORDERED to produce that entry for *in camera* inspection as well.

*ii. Privilege Log Entries 30, 31, and 33–42*

The thrust of Plaintiffs' argument with respect to Privilege Log Entries 30, 31, and 33–42 is that Defendant Bosmann has not met his burden of establishing that Michael Chen's (one of Starfish's previous attorneys) communications were legal in nature and, even if he has, that the crime-fraud exception to the privilege applies. (Dkt. No. 65 at 3–7.)

Only legal advice—not business advice—is covered by the attorney-client privilege. *See Kammerer v. W. Gear Corp.*, 635 P.2d 708, 711 (Wash. 1981). Although it is unclear from the face of the privilege log what type of advice Mr. Chen is providing in Privilege Log Entries 30, 31, and 33–42, Defendant Bosmann supplemented those privilege log entries with his counsel's declaration, which contained more detailed information.[2] (*See* Dkt. No. 65-2.) The declaration

---

[1] Defendant Bosmann also alleges that the attorney-client privilege is not waived because some of the authors and recipients on the emails in Privilege Log Entries 6 and 21 were individual defendants in a separate, similar lawsuit filed in New York. (Dkt. Nos. 65 at 18, 65-1 at 6–12, 65-2 at 3.) Discussion with other individual defendants in the New York litigation does not waive the privilege because those individual defendants are each entitled to that advice as well.

[2] Evidence about whether the attorney-client privilege or the work product doctrine are properly invoked by Defendant Bosmann in his privilege log is gleaned from the privilege log itself and his counsel's declaration. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015).

makes clear that some of the entries contain legal advice, while others may not. Entries 30, 40, and 42 all clearly relate to legal advice because they concern employee insurance and benefits and the visa application process. (Dkt. No. 65-2 at 2–3.) However, the remainder of the entries may not necessarily contain legal advice, but may instead contain business advice. (*See id.*) Therefore, Defendant Bosmann is ORDERED to produce Privilege Log Entries 31, 33–39, and 41 for *in camera* review.[3]

The attorney-client privilege "does not extend to communications in which the client seeks advice to aid him in carrying out an illegal or fraudulent scheme," including the perpetration of a civil fraud. *Whetstone v. Olson*, 732 P.2d 159, 160 (Wash. Ct. App. 1986). This exception applies "only when the client knows, or reasonably should know, that the advice is sought for a wrongful purpose." *Id.* at 161. An *in camera* inspection is not warranted if a bare allegation of fraud is asserted; rather, *in camera* inspection is only appropriate "upon a showing of a factual basis adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to invoke the . . . exception . . . has occurred." *Id.* at 311–12. The party asserting the exception's applicability has the burden of establishing its elements. *Id.* Plaintiffs have not met this burden. They rely on bare allegations of fraud to assert that the exception is applicable—specifically, they rely on the complaint and Naomi Kerwin's conclusory and speculative declaration that fraud abounds. (*See* Dkt. No. 65 at 6–7, 10–11.) Therefore, the Court DENIES Plaintiffs' motion with respect to their assertion that the crime-fraud exception vitiates the attorney-client privilege.

//

---

[3] Plaintiffs also argue that the attorney-client privilege has been waived with respect to Privilege Log Entries 35, 36, and 41 because Mr. Chen's legal advice was disclosed to third parties. (Dkt. No. 65 at 5–6.) If all recipients, authors, and copied parties of and on these emails were Starfish board members at the time the email was sent, the privilege has not been waived. But if any mid-level or lower-level employees are included on these emails, Defendant Bosmann is ORDERED to indicate such on his production of those entries, so that the Court can determine whether the privilege has been waived for that independent reason. *See supra*, Section 2.C.1.i.

2. <u>Work Product Doctrine</u>

Defendant Bosmann asserts that Privilege Log Entries 26–29, 43–47, 57–58, and 64–66 are protected by the work product doctrine. (Dkt. No. 65-2 at 16–28.) The work product doctrine states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). It protects not only an attorney's own work, but also materials prepared *on behalf of* the attorney. *See United States v. Nobles*, 422 U.S. 225, 238–39, 239 n.13 (1975).

The rule does not shield all documents relating to a case. Instead, it applies only to documents prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). To determine whether a document was prepared "in anticipation of litigation," courts examine the totality of the circumstances surrounding the document to evaluate whether it was created "because of" the threat of litigation. *In re Grand Jury Subpoena*, 357 F.3d 900, 907–08 (9th Cir. 2004). The inquiry focuses on whether the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* at 908 (citing *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)). The party asserting the privilege must show that the "threat of litigation was impending." *Johnson v. Allstate Prop. & Cas. Ins. Co.*, Case No. C14-5064-KLS, Dkt. No. 41 at 10 (W.D. Wash. 2014).

Even if documents are protected by the work product doctrine, they are still discoverable if a party can show that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by another means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

*i. Privilege Log Entries 26–29 and 64–66*

Plaintiffs argue that these entries are not protected by the work product doctrine because they are communications between Defendant Bosmann and a non-attorney third party. (Dkt. No. 65 at 14–15.) However, the fact that these documents were prepared at the direction of the attorney, instead of with the attorney present, makes no difference as to whether the documents

ORDER
C17-0376-JCC
PAGE - 7

are protected. *See Nobles*, 422 U.S. at 238–39, 239 n.13. And the timing of the communications reinforces that these documents were made in anticipation of the present litigation. (*See* Dkt. No. 65-2 at 3–4, 16–28.) All of these communications were made either: (1) after the New York litigation had been dismissed, but when the Plaintiffs anticipated that a new lawsuit would soon be filed; or (2) after the commencement of the instant litigation. (Dkt. Nos. 65-1 at 14–16, 26; 65-2 at 3–4, 16–28.) As long as the documents are prepared in anticipation of litigation or for trial and are prepared by or for the party seeking the protection, the documents are subject to the protection of the work product doctrine. *See In re Grand Jury Subpoena*, 357 F.3d at 907–08. Therefore, Privilege Log Entries 26–29 and 64–66 are protected by the work product doctrine.

Thus, Plaintiffs may only compel production of these documents if they can show that they have a substantial need for the materials to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs have not met this burden: they have asserted no substantial need for these materials and no undue hardship that would occur by obtaining the materials through other means. Therefore, Plaintiffs' motion to compel *in camera* review of Privilege Log Entries 26–29 and 64–66 is DENIED.

### ii. *Privilege Log Entries 43–47 and 57–58*

Plaintiffs argue that these entries are not protected by the work product doctrine because they are communications between Defendant Bosmann and a non-attorney third party and because the communications took place before Defendant Bosmann received a litigation hold letter from Plaintiffs' counsel. (Dkt. No. 65 at 13.) Defendant Bosmann responds that the communications were made in anticipation of litigation because the communications were made after Plaintiff Amy Meeker informed Defendant Bosmann that her "agency is aware of what is going on and it has been suggested that we make a formal complaint." (*Id.* at 16.) Plaintiff Amy Meeker's statement is taken out of context. Immediately after that statement, she says: "[t]his is something I would never do because I know it would take away from children who are b[e]ing

helped by Starfish." (Dkt. No. 65-1 at 40.) Therefore, given the totality of the circumstances, this statement would not likely lead Defendant Bosmann to the conclusion that litigation was impending. Privilege Log Entries 43–47 and 57–58 were all made between Plaintiff Amy Meeker's statement (made July 21, 2015) and the date that the litigation hold letter was received by Defendant Bosmann (November 2015), which would have certainly put Defendant Bosmann on notice that litigation was impending. (Dkt. No. 65-1 at 19–23, 40.) Because Plaintiff Amy Meeker's statement alone would not likely have put Defendant Bosmann on notice that litigation was impending, Defendant Bosmann has not met his burden of showing that these documents were made in anticipation of litigation. Therefore, the Court ORDERS Defendant Bosmann to produce Privilege Log Entries 43–47 and 57–58 for *in camera* review. If the Court determines that the entries are protected by the work product doctrine, Plaintiffs will be required to show that they have a substantial need for these materials to prepare their case and that they cannot, without undue hardship, obtain their substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. No later than 14 days after the Court enters this order, the parties shall submit a revised stipulated protective order that covers the medical history and information for each of Plaintiffs' adopted children other than C.M.;

2. No later than 7 days after the Court enters the parties' stipulated protective order, Plaintiffs shall produce, whether in the form of deposition testimony or a response to an interrogatory, the following information about each of Plaintiffs' other adopted children: (1) medical diagnoses (except mental health diagnoses); (2) treatments related to the aforementioned diagnoses; (3) prognoses; (4) a typical week of care for each child (including schedule and cost); and (5) any special care each child needs over the course of a longer period of time (including schedule and cost);

3. No later than 14 days after the Court enters this order, Defendant Bosmann shall produce Privilege Log Entries 6, 31, 33–39, 41, 43–47, and 57–58 for *in camera* review;
    a. If any mid-level or lower-level employees are included on the emails in Privilege Log Entries 35, 36, and 41, Defendant Bosmann shall indicate that on his production of those entries, so that the Court can determine whether the privilege has been waived for an independent reason;
4. No later than 14 days after the Court enters this order, if any mid-level or lower-level employees were included on the email in Privilege Log Entry 21, Defendant Bosmann shall produce that entry for *in camera* review;
5. If, after reviewing this order and Privilege Log Entries 6, 21, 31, 33–39, 41, 43–47, and 57–58, Defendant Bosmann concludes that the attorney-client privilege and the work product doctrine are indeed inapplicable, he may produce those documents to Plaintiffs in lieu of providing them to the Court for *in camera* review. If Defendant Bosmann chooses this option, he is ORDERED to file a short declaration with the Court confirming his production of those privilege log entries.
6. The parties shall meet and confer before filing any future discovery motions.

DATED this 16th day of May 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE